*607 The opinion of the court was delivered by
"Valentine, J.:
This was an action commenced by the board of county commissioners of Labette county, Kansas, under § 39 of the act renting to counties and county officers,. (Comp. Laws of 1870, p. 278,) against Nixon Elliott and J. S. Waters, to recover for moneys alleged to have been illegally paid by the county to the defendants.
The facts of the case appear to be substantially as follows: In 1871 the city of Chetopa, a city of the second class, in Labette county, passed an ordinance providing for making certain sidewalks in the city, and also provided for levying a tax to pay for the same. The abutting lot-owners refused to-make the sidewalks, and the city let the contract for making them to the defendant Elliott, who in due time constructed them in accordance with the ordinance. A special tax was then levied to pay for such sidewalks, which special tax was duly certified to the county clerk, who placed the same on the county tax roll. The abutting, lot-owners failing to pay the tax which had been levied upon their lots, the county treasurer in due time advertised the lots for sale. The abutting lot-owners then obtained a temporary injunction to restrain the county treasurer from selling the lots. The treasurer, however, disregarded the injunction, and offered the lots for sale, and on July 1,1871, sold the same to defendant Elliott for the amount of the sidewalk tax and costs of sale, which in the aggregate amounted to $1,409.55. Elliott paid the costs of the sale in money, and paid the fest of the purchase-money, to wit, $1,382.24, which was the amount of the sidewalk tax, by furnishing to the county treasurer the receipt and order of the city treasurer of the city of Chetopa. for that amount — that is, Elliott, in order to pay that portion of the purchase-money on the tax sales which represented the amount of the sidewalk tax, receipted to the city treasurer for the amount of the sidewalk tax, and the city treasurer gave to Elliott an order and receipt to the county treasurer for that amount, and the county treasurer, instead of requir *608 ing Elliott as the purchaser of the lots to pay to him that portion of the purchase-money which represented the sidewalk tax, so that he (the county treasurer) could then pay it back to Elliott on the order and receipt of the city treasurer, merely took the order and receipt of the city treasurer in lieu of that portion of the purchase-money, and the county treasurer then issued to Elliott tax-sale certificates for the lots purchased by him. Afterward Elliott paid' the subsequent taxes on the lots for the year 1872, amounting to $460.79. It is admitted by all the parties that for some reason these tax sales were void. On January 14, 1876, Elliott presented to the board of county commissioners a claim against Labette county for $1,870.34, being the aggregate amount of the tax-sale certificates, including the sidewalk tax, the costs of sale, and the subsequent taxes paid by him. On February 16, 1876, the county board allowed and paid that portion of the claim which was for subsequent taxes with interest, and Elliott receipted for the same. Elliott still continued to claim the original amount of the tax-sale certificates, to wit, $1,409.55, and the county still refused to pay the same; and therefore, on January 22,1879, Elliott commenced an action against the county for the same, with interest, which in the aggregate amounted to $2,284.75. The county board answered to the action in substance as follows:
1. That Elliott had never paid anything into the county treasury for said certificates.
2. That he bought them in violation of the restraining order of the district” court.
3. An accord and satisfaction.
4. That Elliott’s claim was barred by the statute of limitations.
Afterward, and on January 7, 1880, the board of county commissioners and the defendant Elliott compromised and settled all their disputes. Elliott at the time claimed as principal and interest the sum of $2,419.82; but the county board agreed to pay him only the original amount of the sidewalk tax, without interest, which, as before stated, was $1,382.24, *609 and would not agree to pay any interest or costs of sale or costs made in the suit theu pending; and Elliott finally agreed to receive that amount, to wit, $1,382.24, in full satisfaction of his entire claim, and agreed to dismiss his said action against the county board, at his own costs. The county board then, by an order on the treasury, paid Elliott said amount, and Elliott after receiving the same dismissed his action in the district court against the county, and paid the costs.
Afterward, and on April 9, 1881, the county board commenced this action against the defendants, Elliott and Waters, under §39 of the act relating to counties and county officers, as aforesaid. Said §39 reads as follows:
“Sec. 39. All fees, costs or other allowances, or any fees obtained from or allowed against any county, when the same are not authorized by law and not refunded on demand, may be recovered back in a civil action in the name of the proper county, in any court of competent jurisdiction; and on the rendering qf the judgment in any such case, the justice or the court rendering the same shall add one hundred-per cent, to the same, to go the county, and also a fee of ten dollars if in a justice’s court, and twenty-five dollars if in the district court, to go to the county attorney or other person prosecuting the same.” (Comp. Laws of 1879, p. 278.)
The defendants answered to this action, admitting certain portions of the plaintiff’s petition, and denying other portions thereof. On July 6, 1881, a trial was had before the court and a jury, and the jury rendered the following general verdict, and made the following special findings, to wit:
GENERAL VERDICT.
“We, the jury, find the issues joined for the plaintiff, and assess their damages at $1,53.7.24.”
' SPECIAL FINDINGS.
“1. Did the defendant in this suit, Nixon Elliott, commence an action in this court on January 22, 1879, against, the board of county commissioners of Labette county, Kansas, claiming therein to recover from said board the sum of $1,382.24, together with' ten per cent, interest thereon from July 1, 1872? A. Yes.
*610 “2. Did the defendant in said action take issue with the plaintiff therein, and by answer dispute plaintiff’s right to recover the whole or any part of said claim? A. Yes.
“3. Was the claim counted upon in said action by the plaintiff therein based upon an alleged liability upon the part of the defendant therein to refund to him the aforesaid sum of $1,382.24 and interest, on account of his having purchased at treasurer’s sale certain lots and parts of lots in the city of Chetopa, sold by the treasurer of said county July 1, 1872, for the collection of certain sidewalk taxes assessed against said premises ? A. Yes.
“4. Was such action and the alleged cause thereof compromised and settled between the parties thereto, on January 7, 1880? A. Yes.
“ 5. Was the allowance of $1,382.24, by plaintiff herein to defendant herein, upon said January 7, and to recover which this action is brought, made upon and pursuant to such agreed compromise and settlement, and in full payment of the claim then in suit, which was so compromised and settled? A. Yes.
“6. Did the defendant, Elliott, dismiss his said action and pay the costs therein, as by said agreement and compromise and settlement he was required ? A. Yes.”
The court below set aside the general verdict, upon the grounds that it was against the evidence, against the law, and against the instructions of the court, and rendered judgment upon the special findings in favor of the defendants and against the plaintiff for costs. The plaintiff then moved the court for a new trial, which motion was overruled, and the ■ruling was duly excepted to. The plaintiff now brings the case to this court, and asks that the judgment of the court below be reversed.
Counsel for plaintiff say in their brief: “We do not care to have a reversal of the judgment in this case, unless a new trial would be likely to be attended with different results; and that is dependent upon the meaning and proper construction of said section 39.”
We do not understand from this that counsel waive any technicalities, provided this court should be of the opinion that upon the merits of the case the plaintiff should recover; *611 but we do understand from it that, if the court should be of the opinion that upon the merits of the case the defendants should recover, then that counsel do not wish to obtain a reversal of the judgment, and a new trial merely upon technicalities; that is, they do not wish a new trial because of technical errors, if they are finally to be defeated upon the merits. We shall therefore proceed to consider the ease upon its merits,'waiving, for the present, all mere technicalities.
We think that counsel for plaintiff are correct in considering that the proper determination of this action depends entirely upon the proper construction or interpretation to be given to said §39; but we can hardly agree with counsel in the construction which they give to said section. They further say in their brief, that “if this section does not authorize a recovery when it (the money) has been paid under a misunderstanding of law, then it means nothing and is of no use. No recoveries could be had under it that could not have been had before. We ask the court to declare in general terms, that § 39 covers errors of judgment on the part of the commissioners, and mistakes of law as well as of fact.” Counsel further say, that “ all the business affairs of á county are in the hands of commissioners, who are elected on acount of their localities, and not because of their superior' qualifications or shrewd buiness capacities, or their knowledge of the law; hence the necessity of protecting the people against errors of judgment on the part of their agents, whereby the county might be bankrupted and ruined.” We think this construction of the section is erroneous. It will be noticed that the section is of a highly penal character. The county may not only recover the amount which it has illegally paid out, but it may recover double that amount, and also recover attorney’s fees in the case. It was certainly not intended to prevent the county board from compromising and settling doubtful claims. Take this claim, for instance. At the time of the settlement it amounted to $2,419.82, including principal and interest, be *612 sides the costs that had accrued in the action then pending between the parties in the district court.
Now had the parties no power to compromise and settle this doubtful and uncertain claim? Had the parties no power to make a valid agreement that the county should pay and Elliott receive only a portion of his claim? Or is it necessary, if anything should ever be paid or received, that the parties- should fight it out to its ultimate end, and then that Elliott should recover all or lose all, and the county pay all or pay nothing? Had the parties no power, by settlement and compromise to divide the loss between them? For although Elliott has received $1,382.24, still he has suffered loss.
If the plaintiff’s theory is correct, then no compromise or settlement of any kind between a county and an individual can ever be of any validity; for if the original claim may for any reason whatever be defeated, then if the county agrees to pay and does pay any portion of such claim, such portion may be recovered back; and if the compromise and settlement is not binding on both parties, we suppose it cannot be binding on either; and if not binding on either, then if the claim should be a valid one, and if the holder of the claim should agree in compromise and settlement to receive, and should receive, a less amount than the whole amount of his claim, in full satisfaction of his whole claim, then he may afterward sue the county and recover the remainder of his claim not yet received. We can hardly think it possible that counsel would claim that a compromise and settlement may be binding upon one side and not binding upon the other. We can hardly think it possible that they should claim that if Elliott’s claim was such as might be defeated, then that the county may recover back what it paid him; while if his claim could not be defeated, still that he cannot recover from the county the balance of his claim not yet paid, And if it be admitted that counties and individuals have the power to compromise and settle matters in dispute between them, then we think it must also be admitted that the compromise and settlement of such *613 matters must be held to be binding upon both parties. The settlement and compromise in the present case was as follows: The county agreed on its part that if Elliott would agree to lose all the interest due on the sidewalk tax, and all the costs which he had paid on the sale of the lots, and all the costs which had accrued in the action then pending between Elliott and the county, that the county would pay the net amount of the sidewalk tax, which was but little more than half the amount of Elliott’s entire claim; and Elliott agreed on his part that he would lose all these items of costs and .interest if the county would pay him the net amount of the sidewalk tax. This agreement we think was valid, and after the parties had entered into it, then we think the fulfillment of it by the parties was no violation of any law; but on the contrary, we think it could be enforced as other valid agreements are enforced. When .the county paid the $1,382.24, it paid that amount not upon the original claim of the plaintiff (which possibly could not have been enforced), but it paid it upon the new agreement of the parties, which, as we have before stated, was a valid agreement, and which we think can be enforced. A bona fide though doubtful controversy pending in the courts has always been considered a sufficient consideration for an agreement in compromise and settlement of such doubtful controversy, although in fact and in law one or the other side must ultimately be beaten if the litigation is continued until a final judgment is reached upon the merits. And' it is generally said that compromises and settlements are favored in law. There is no claim.in this case that the county commissioners acted in bad faith; and there is no claim that Elliott was paid more than his services were worth in building the sidewalks. The entire amount which was paid him was only the amount which he should have received several years before that time.
For the purposes of this case, it may be admitted that Elliott’s claim could have been defeated; and yet this is not entirely certain. The first defense made by the county board, in the action of Elliott v. The Board, we think, was not suffi *614 cient; the second may possibly have been sufficient, though it is not certain; the third was probably not sufficient; while the fourth may have been sufficient, but that question is not entirely clear. For the purposes of this case, however, we shall consider that the county board might have defeated the entire claim of the plaintiff, if it had chosen to do so. But still we do not think its compromise and settlement of the matter in controversy was for .that reason wholly, or even partially, illegal and void; and entertaining these views, we think it follows that the judgment of the court below must be affirmed.
All the Justices concurring.